North Arkansas Highway Improvement District
No. 2 v. Rowland.

Opinion delivered May 3, 1926.

1. Highways—mandamus to enforce extension of taxes.—Acts 1917, No. 473, § 25, creating a highway improvement district, by providing that, if any bond or interest thereon should not be promptly paid when due, the county clerk, collector, and commissioners, respectively, may be proceeded against by any person interested to compel the performance of their respective duties, did not restrict the right to the remedy of mandamus in other cases, and in a proper case the board of commissioners could proceed by mandamus to compel the clerk of one of the counties in the district to extend the taxes levied by the board on the tax-books of his county.

2. Highways—extension of taxes—duty of clerk.—Under Acts 1917, No. 473, creating a highway improvement district in three counties and directing that the board of commissioners shall provide for annual installments to be collected, that the secretary of the board shall file with the county clerks a certified copy of the levying order, and that the clerks shall extend on the taxbooks the amount of such installments, *held* that the duties of the clerks were purely clerical, and they were without authority to inquire or determine whether it was necessary to levy such taxes.

Appeal from Fulton Circuit Court; *John C. Ashley,* Judge; reversed.

*S. M. Casey,* for appellant.

*Oscar E. Ellis, H. A. Northcutt, P. C. Goodwin, G. T. Humphries* and *E. H. LaMore,* for appellee.

Smith, J.  This suit was brought by the commissioners of North Arkansas Highway Improvement District No. 2 against the county clerk and collector of Fulton County to require the clerk to extend, and the collector to collect, the road tax which had been ordered

levied against lands lying in the improvement district for the year 1926. The district was created by special act No. 473 of the 1917 session of the General Assembly. Volume 2, Acts 1917, page 2181. The district was organized to improve a public road running through the counties of Independence, Izard and Fulton, and, pursuant to the provisions of the special act, the district was duly organized and the road was improved.

The special act required the commissioners to assess the betterments arising from the proposed improvement against the lands of the district, and § 17 thereof provides that, as soon as the assessments have been completed, "the commissioners shall make an order providing that there shall be assessed on the real property within the entire district such proportion of the assessment of benefits against the land in the entire district as will be sufficient to complete the improvements and pay all expenses of the district, with ten per cent. (10%) added for unforeseen contingencies; and shall provide in said order the annual installments in which said levy shall be paid, not to exceed ten per cent. (10%) in any one year," and that "the secretary of the commission shall file with the county clerk of each of the counties in which any land in the district is situated a certified copy of said levying order, which shall be inscribed by the county clerk in a record book in his office." This certificate was prepared and filed with the respective county clerks of the three counties. It recited that $100,000 of the bonds of the district which had been sold had been received back from the purchasers and had been canceled, and upon this recital directed the extension and collection for the years 1923 to 1942, inclusive, of 4 per cent. of the betterments assessed against the lands in the district.

Section 20 of the act requires the county clerks of the respective counties to extend on the taxbooks the amount of the installment of the assessment of betterments against each tract of land in his county for that year, "showing the amount opposite the tract of land or

real property charged therewith," and the failure of the clerk to perform this duty is made a misdemeanor.

The complaint of the commissioners recites that the proposed improvement is nearly, but not quite, completed, and that they have been required to borrow large sums of money, and that installments of payments of the principal and interest thereon mature each year, and that, for the purpose of raising the money so required, the board of commissioners, by resolution of the board adopted on October 20, 1925, ordered a levy of 3 per cent. of the assessed benefits to be collected for the year 1926, due notice of which had been given to the county clerk of Fulton County, but that official had failed and refused to extend the taxes so ordered extended. There was a prayer that by mandamus the clerk be so required to do, and there was a prayer that, when the taxes had been so extended, the collector be required to collect them.

A demurrer was filed to this petition for mandamus, and certain landowners joined the clerk and collector in an answer filed to the petition. The substance of this answer was that taxes delinquent for prior years had not been collected, and that, if these taxes were collected, as they should be, there would be no necessity to collect taxes against any lands in Fulton County, for the reason that the county would receive under act No. 3 of the Acts of 1925 a sufficient sum of money to pay the bonds maturing in 1926 chargeable against the lands in Fulton County which were in the improvement district. This act No. 3 is entitled "An act to relieve landowners in North Arkansas Road Improvement District No. 2."

Section 1 of this act provides that, at the July, 1925, term of the county court of Fulton County, and each year thereafter, the county court shall set aside "a sufficient sum of money out of the automobile and gasoline fund being paid into Fulton County to retire the interest and bonds due each year against North Arkansas Road Improvement District No. 2, running from Batesville to Mammoth Spring, Arkansas," and "that said court shall

continue to set aside such funds for each year until all of said bonds and interest shall have been paid in full.''

The court made a finding that, under the provisions of this act of 1925, there was no necessity to extend taxes against the lands of the district, and declined to direct the extension of any taxes.

The only testimony offered at the hearing on the petition was that of G. R. Landers, the secretary of the district, and the order of the county court made in 1922, hereinbefore referred to, directing the extension of 4 per cent. of the betterments assessed against the lands in the district up to and including the year 1942. The secretary also identified the resolution of the board of commissioners adopted on October 20, 1925, changing the former order by directing the extension and collection of 3 per cent. of the assessed betterments.

The secretary testified that the commissioners, in adopting this resolution, had decided that a 3 per cent. assessment would be required and would be sufficient, and that a copy of this resolution was mailed to the county clerk of Fulton County the following day, and at the same time copies were sent to the county clerks of the other counties in the district, who had duly extended the taxes therein authorized against the lands in their respective counties. The certificate mailed to the county clerk of Fulton County was filed by that official on October 23, 1925. The secretary further testified that the levy for the previous year had been made to pay the sum of $30,503.01, the maturities for that year, and he also testified that the funds which Fulton County would derive under act No. 3 of the Acts of 1925 might be sufficient to pay Fulton County's *pro rata* part of that sum, but he also testified that, to complete the improvement, there had been issued and sold $140,000 in bonds in addition to the bonds sold at the beginning of the construction. The secretary further testified that the receipts under the act of 1925 left a deficiency of about $3,000 in that year. He admitted that there was due the district about $2,500 in delinquent taxes, and on his cross-examination

he stated that he had received no complaint from the holders of any of the bonds of the district about the failure of the district to pay maturing bonds and the interest on the bonds, and that no creditor of the district had requested the board to institute this mandamus proceeding.

At the conclusion of the examination and the cross-examination of this witness, counsel for the respondents demurred to the evidence, and in his argument thereon stated that the petitioners had admitted that only $30,-000 was necessary to be raised to meet the annual payment, and that Fulton County's *pro rata* share of the annual apportionment of the automobile and gasoline tax would suffice to pay Fulton County's part of the $30,000 of maturities. This statement does not appear to have been made as testimony, but by way of argument, and, when the statement was made, the secretary was then asked about the additional bond issues, and stated that there had been an additional issue of $140,000 in bonds to complete the improvement.

In denying the relief prayed, the court expressed doubt concerning the right of the commissioners to maintain the suit, and counsel for the clerk and collector and the intervening landowners insist that the commissioners had no such right, it being contended that § 25 of the original act of 1917 gave the right to mandamus the clerk or the collector only to the holder or holders of any of the bonds of the district.

We think counsel have misconceived the purpose and effect of this section of the original act. It provides that "if any bond or interest thereon should not be promptly paid when due, the county clerk, collector and commissioners, respectively, may be proceeded against by mandamus by any party interested to compel the performance of their respective duties required by this act. * *" The obvious purpose of this section was to give the bondholders the right to proceed by mandamus against either the clerk, or the collector, or the commissioners, or all of them, to compel the performance of their

duties under the act. The act makes the commissioners the fiscal agents of the district, and § 28 thereof requires them to file annual reports with the county courts of the respective counties. Section 25 of the act was not intended to relieve the commissioners of any duty resting upon them. It only gave the bondholders a remedy in the event there was a failure or refusal to collect the taxes and pay the bonds.

We conclude therefore that the act does not restrict the right to proceed by mandamus to the bondholders. The commissioners may do so in a proper case.

Was a case for mandamus made? We think there was. The clerk was without authority to inquire or to determine whether it was necessary to levy the taxes. His duties were clerical. The original levying order made when the assessment of benefits was approved by the county court required him to extend against each tract of land 4 per cent. of the assessed betterments, and this he should have done, unless, by order of the court, he was directed to reduce the levy to 3 per cent.

We do not discuss the testimony of the secretary or the inferences deducible from it. His testimony shows that the board of commissioners considered an assessment of 3 per cent. necessary to take care of the maturing obligations of the district, and this conclusion had been embodied in a resolution, which the board had the authority to make, and it was the duty of the clerk to obey it.

We do not mean to hold that, if it were shown in a proper proceeding that the commissioners of the district were levying taxes unnecessarily, the taxpayers would be without remedy to prevent this from being done.

We do not understand that the commissioners have attempted to remit delinquent taxes which other landowners have paid. It is their duty to see that these taxes are collected, and they may be required to perform that duty, if necessary, and, when these taxes have been collected, they will be available for use in paying the dis-

trict's indebtedness, and may then be taken into account in determining what future levies against the assessed betterments will be necessary, after taking into account the revenues derived from act No. 3 of the Acts of 1925.

There is some question as to the sufficiency of the funds which will be derived from act No. 3 of the acts of 1925 to meet the district's obligations, and it is the duty of the commissioners to see that these obligations are met. The duties of the clerk and collector in the premises are purely ministerial, in the performance of which they have no discretion, and mandamus should therefore have been ordered.

The judgment of the court below will therefore be reversed, and the cause remanded.